

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | INFORMATION |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO._____ |
| -vs- ) | Title 18, Section 371, |
| ) | United States Code |
| LAUREN MAY, ) | |
| ) | JUDGE GWIN |
| Defendant. ) | |

5:10CR554

The United States Attorney charges:

## COUNT 1

1. At all times material herein, the Defendant, LAUREN MAY, resided in the Norton, Ohio area.

2. At all time material herein, the IndyMac Bank, F.S.B. (referred to herein as IndyMac Bank), located in California, with offices in Georgia, was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC).

3. At all times material herein, J.A.H. and A.D.N., not charged herein, owned and controlled HH&N, LLC, an Ohio company with its office located at 3869 Darrow Road, Suite

104, Stow, Ohio. The purpose of HH&N, LLC was originally to purchase, rehabilitate and sell homes in the Akron, Ohio area. HH&N, LLC, at all times herein, was essentially a bank account for real estate transactions of J.A.H. and A.D.N.

4. At all times material herein, A.D.N. was the majority owner of, and controlled, V.P. Equity, LLC, a mortgage company, and established its principal place of business at an office adjacent to HH&N, LLC in Stow, Ohio.

5. At all times material herein, J.C., not charged herein, was a resident of the Akron, Ohio area and controlled and operated Ocean Sands Investment Group, LLC to sell real estate lots in the Panama City, Florida area held by a J.C. controlled entity known as East Bay Land Holdings, LLC.

6. At all times material herein, the HUD-1 Form was a real estate form commonly used in real estate transactions, which form and its contents were developed by and within the jurisdiction of the United States Department of Housing and Urban Development (HUD), a department and agency of the United States and a part of the Executive Branch of United States government. The HUD-1 Form disclosed how the loan proceeds were disbursed and reflected whether any funds were provided by the borrower as a down payment on the purchase of the property.

7. At all times material herein, a "straw buyer" was an individual who, usually for compensation and/or some promised benefit, signed mortgage loan documents so as to conceal from the lending institution the fact that someone else, usually a person with poor credit, was going to be the de facto owner of the property and that the straw buyer, although he or she signed the mortgage application and note, had no intention of making mortgage payments or living in

- 3 -

the mortgaged property as his or her residence.

8. From in or around February 2006, through at least July 2006, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant LAUREN MAY, and others not charged herein, including but not limited to J.C., J.A.H. and A.D.N., knowingly and voluntarily did conspire, confederate and agree together and with each other, and with others, to violate the laws of the United States, to wit: to submission of false information and documents to a bank in applying for a loan, in violation of Title 18, United States Code, Section 1014; bank fraud, in violation of Title 18, United States Code, Section 1344; mail fraud, in violation of Title 18, United States Code, Section 1341; and wire fraud, in violation of Title 18, United States Code, Section 1343.

## Manner and Means

9. It was part of the conspiracy that, Defendant, along with others, met with uncharged co-conspirator A.D.N. and agreed to engage in the following transactions:

    a. J.A.H. and A.D.N. agreed with J.C. to act as mortgage brokers, through V.P. Equity, to recruit "straw buyers" and falsify loan applications, HUD-1 forms, and other documents of these "straw buyers." These documents were submitted to obtain financing to purchase the Florida lots J.C. was selling, through Ocean Sands Investment Group, LLC and East Bay Land Holdings, LLC, and, in particular, in a development known as "WatersEdge."

    b. A.D.N. met with Defendant, and they agreed that Defendant would use her husband's credit since only he was employed outside the home. Defendant

- 4 -

then conducted the business of being a straw buyer through her husband by directing his actions, including the signing of documents used in securing financing through a bank loan to purchase a lot in the "WatersEdge" development from J.C.

c. A.D.N. agreed to make any and all mortgage payments for Defendant in return for the Defendant causing her husband to act as a straw buyer to secure a mortgage loan in Defendant's husband's name, fraudulently using, and causing to be used, her husband's credit to purchase a property located in Florida.

d. In return for Defendant directing her husband to complete a false application and other documents as a straw buyer, A.D.N. agreed to pay Defendant $20,000.00.

e. Defendant and A.D.N. agreed that A.D.N. would pay all expenses related to the property, and, once the property was sold, they would split all profits equally.

f. A.D.N. then submitted, and caused to be submitted, through V.P. Equity, LLC the above-mentioned mortgage loan application in the name of the husband of Defendant to the IndyMac Bank F.S.B.

g. On or about February 14, 2006, the initial loan application was rejected by the bank because of "Insufficent Funds to Close" or insufficient cash on hand to make a downpayment. A.D.N. and Defendant then agreed that A.D.N. would provide funds to Defendant to inflate her and her husband's

- 5 -

bank account balance.

h.  On or about February 22, 2006, A.D.N. purchased an official check payable to the Defendant, LAUREN MAY, in the amount of $30,000.00. On the same day that check was deposited into the joint bank account of Defendant and her husband so as to give the appearance to the lender that the Defendant's husband had sufficient funds to close.

i.  On or about February 24, 2006, A.D.N., through V.P. Equity, submitted a verification of deposit to IndyMac Bank F.S.B. reflecting the inflated balance in the joint bank account of Defendant and her husband.

j.  Based on this increased cash balance, the bank issued its acceptance of this application as being "CLEAR TO CLOSE," and the following loan was granted:

| Date | Bank | Property | Amount of Loan |
| --- | --- | --- | --- |
| February 28, 2006 | IndyMac Bank, F.S.B. | WatersEdge Lot # 43 Panama City, Florida | $360,000.00 |

k.  The mortgage loan documents which A.D.N. and Defendant submitted, and caused to be submitted, were false for the following reasons, among others:

1.  The applications and HUD-1 Forms indicated that Defendant's husband was to be the purchaser and owner of the property, and, by signing the Mortgage Note, Defendant caused her husband to represent that he would be responsible for the repayment of the loan

- 6 -

by making scheduled, monthly payments to the bank. In truth and fact, based upon her agreement with A.D.N., Defendant had no intention at the time she caused these documents to be executed, to have herself or her husband, be personally responsible for this loan or to make monthly loan payments as required by the mortgage note. Defendant thereby concealed from the bank the involvement of A.D.N. in this transaction.

2. On a HUD-1 Form, Defendant and A.D.N. represented, and caused to be represented, to the IndyMac Bank that Defendant's husband, as the borrower, made a down payment of approximately $47,135.35 on the purchase of the property, when, in fact, this down payment was not made by Defendant or her husband, as a borrower.

3. On the mortgage loan application, Defendant and A.D.N. represented, and caused to be represented, various financial information concerning Defendant's husband which they knew falsely inflated the income of Defendant's husband in order to assure approval of this loan.

4. The application indicated that the property was to be a second residence for Defendant's husband when, in fact, neither Defendant nor her husband ever saw, and had no plans to live in, this property. Rather, Defendant considered this transaction to be an investment whereby the property was to be sold within a short period of time

- 7 -

and the profits split with A.D.N.

l.  On or about February 28, 2006, on the same day that the loan documents were executed, Defendant caused to be issued from her joint bank account a check payable to HH&N, LLC in the amount of $10,000.00, with a notation that this check was "repayment on a 30K loan."

m.  In the course of this conspiracy, Defendant, LAUREN MAY, while residing in the Northern District of Ohio, executed, and caused the execution of, the above-mentioned loan application and sent, and caused to be sent, by United States mail and commercial interstate carrier and through interstate wire and radio communication, including by facsimile transmission, email and telephone calls, the loan application, documents and information, between the Northern District of Ohio and lending and loan settlement entities in Florida, relating to, and in furtherance of, the mortgage fraud conspiracy, as set forth herein.

n.  In or about January 2007, A.D.N. stopped paying the mortgage payments for the husband of Defendant and the mortgage loans went into default and foreclosure, resulting in a loss, or charge off, of over $330,000.00.

### Overt Acts

10.  In furtherance of the conspiracy and to effect its unlawful objects, Defendant, LAUREN MAY, and others, committed the following overt acts, among others, in the Northern District of Ohio, Eastern Division, and elsewhere:

a.  On or about February 22, 2006, A.D.N. purchased an official check payable

- 8 -

to Defendant, LAUREN MAY, in the amount of $30,000.00.

b. On or about February 22, 2006, Defendant, and A.D.N. caused the above-mentioned check for $30,000.00 to be deposited into the joint bank account of Defendant and her husband.

c. On or about February 28, 2006, Defendant, in the Northern District of Ohio, signed, and caused to be signed, the mortgage loan application and HUD-1 Form with the IndyMac Bank, F.S.B. for a $360,000.00 loan for the purchase of WatersEdge, lot #43 in Panama City, Florida.

d. On or about February 28, 2006, Defendant caused her husband to issue a check on their joint checking account to HH&N, LLC in the amount of $10,000.00.

e. On or about February 28, 2006, the law firm acting as escrow agent for this transaction, wire transferred, from its bank account in Florida, the net proceeds from this loan to J.C.'s Ocean Sands Investment Group, LLC bank account in the Northern District of Ohio.

All in violation of Title 18, United States Code, Section 371.

STEVEN M. DETTELBACH
United States Attorney

By: *Ann C. Rowland*
ANN C. ROWLAND, Unit Chief
Major Fraud & Corruption Unit